UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL HARRIS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>S. ESCAMILLA,<br><br>　　　　Defendant. | Case No.  1:13-cv-1354-DAD-MJS (PC)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO STAY THE PROCEEDINGS AND REOPEN DISCOVERY**<br><br>**(ECF No. 78)**<br><br>**ORDER GRANTING PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE**<br><br>**(ECF No. 94 EX. A)**<br><br>**ORDER DIRECTING PLAINTIFF TO FILE AN OPPOSITION OR STATEMENT OF NON-OPPOSITION TO DEFENDANT'S SUMMARY JUDGMENT MOTION WITHIN TWENTY-ONE (21) DAYS OF THIS ORDER**<br><br>**TWENTY-ONE (21) DAY DEADLINE** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 28 U.S.C. § 1983. The case proceeds against Defendant Escamilla for violating Plaintiff's First Amendment right to exercise his

religion.[1] Plaintiff's allegations stem from a cell search on January 14, 2013. (ECF Nos. 9-10, 33 & 26.)

Before the Court is Plaintiff's March 21, 2016 "motion for stay of proceedings to complete discovery" (sic), brought pursuant to Federal Rule of Civil Procedure 56(d).[2] (ECF No. 78) (hereafter "Pl. Mot. to Stay.") Defendant filed an opposition on April 11, 2016. (ECF No. 82) (hereafter "Def.'s Opp'n.")  Plaintiff's reply was filed on May 26, 2016. (ECF No. 94) (hereafter "Pl. Reply.) The matter is submitted pursuant to Local Rule 230(/).

## I.   PROCEDURAL HISTORY

This action proceeds on Plaintiff's October 31, 2013, first amended civil rights complaint. (ECF No. 9.)

The Court issued a discovery and scheduling order on April 1, 2015, setting a discovery deadline of December 1, 2015 and a dispositive motion deadline of February 8, 2016.  (ECF No. 39.)  On February 8, 2016, Defendant filed a motion for summary judgment.  (ECF No. 69.)  On February 22, 2016, Plaintiff filed a motion for a sixty-day extension of time to respond to Defendant's motion, which was granted.  (ECF Nos. 72 & 73.)  Plaintiff has not filed an opposition to Defendant's motion for summary judgment. Instead, Plaintiff has filed the instant motion requesting the Court stay the proceedings to complete discovery, on the grounds that he lacks sufficient evidence to file an opposition.  (ECF No. 78.)

## II.   PLAINTIFF'S ALLEGATIONS

At the time of the events underlying this action, Plaintiff was incarcerated at California State Prison ("CSP-Corcoran") in Corcoran, California.  Plaintiff was transferred to the California Institute for Men ("CIM") in Chino, California, on October 27, 2014, and he is currently held there.

---

[1] On January 25, 2016, this Court recommended dismissal of Plaintiff's Fourteenth Amendment Equal Protection Claim.  (ECF No. 64.) That recommendation remains pending before the district judge, and so the Equal Protection claim is not a subject of the motion for summary judgment at issue here.
[2] Formerly Fed. R. Civ. P. 56(f).

2

1  Plaintiff alleges that Defendant Escamilla searched Plaintiff's cell on January 14, 2013, outside of Plaintiff's presence. When Plaintiff returned to his cell, he found his Quran had been kicked under his bed and defiled by a boot mark. Plaintiff's cellmate, who witnessed the search, told Plaintiff that Defendant Escamilla was responsible for the search.

### III.  MOTION TO STAY PROCEEDINGS TO REOPEN DISCOVERY

#### A.  Legal Standard

Federal Rule of Civil Procedure 56(d) permits the Court to delay consideration of a motion for summary judgment to allow parties to obtain discovery to oppose the motion. When a motion for summary judgment is filed "before a party has had any realistic opportunity to pursue discovery relating to its theory of the case," a Rule 56(d) motion should be freely granted. Burlington N. Santa Fe R.R. Co. v. Assiniboine and Sioux Tribes of the Fort Peck Reservation, 323 F.3d 767, 773 (9th Cir. 2003).

A party asserting that discovery is necessary to oppose a motion for summary judgment "shall provide a specification of the particular facts on which discovery is to be had or the issues on which discovery is necessary." Local Rule 260(b). However, where "no discovery whatsoever has taken place, the party making a Rule 56[(d)] motion cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not yet been laid." Burlington N., 323 F.3d at 774. "The Courts which have denied a Rule 56[(d)] application for lack of sufficient showing to support further discovery appear to have done so where it was clear that the evidence sought was almost certainly nonexistent or was the object of pure speculation." VISA Int'l. Serv. Ass'n v. Bankcard Holders of Am., 784 F.2d 1472, 1475 (9th Cir. 1986) (citation omitted).

Where a party requests to reopen discovery after discovery has closed, the request also must meet the requirements of Federal Rule of Civil Procedure 16. District courts must enter scheduling orders that "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). Once

3

entered by the court, a scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). Scheduling orders are intended to alleviate case management problems. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir.1992). As such, a scheduling order is "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." Id. (quoting Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141 (D. Maine 1985)). Good cause must be shown for modification of the scheduling order. Fed. R. Civ. P. 16(b)(4). The Ninth Circuit explained:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although the existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.

Johnson, 975 F.2d at 609 (internal quotation marks and citations omitted). Therefore, parties must "diligently attempt to adhere to the schedule throughout the course of the litigation." Jackson v. Laureate, Inc., 186 F.R.D. 605, 607 (E.D. Cal. 1999). The party requesting modification of a scheduling order may be required to show:

> (1) that she was diligent in assisting the Court in creating a workable Rule 16 order, (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, and (3) that she was diligent in seeking amendment of the Rule 16 order, once it become apparent that she could not comply with the order.

Id. at 608 (internal citations omitted).

## B. Plaintiff's Arguments

Plaintiff seeks an order staying the proceedings for four months and reopening discovery to communicate with several inmate witnesses prior to opposing Defendant's summary judgment motion. He also seeks an order directing Defendant to facilitate communication between him and these witnesses.

As to the latter issue, first, it appears the institution provided Plaintiff the CDCR numbers and locations of the inmate witnesses on April 16, 2016, and as of May 12, 2016, gave Plaintiff initial approval to communicate with them in writing. See Pl. Reply Ex. D, "Requests for Correspondence Approval." Thus, it does not appear Plaintiff actually needs assistance facilitating this communication. Indeed, Plaintiff concedes that the process of communicating with them "appears to be underway." Pl. Reply at 26.

Plaintiff gives a list of reasons why he could not seek this discovery earlier: health issues; movement between facilities; lack of access to the law library; inefficient prison mail system; inconvenient timing of his deposition; having to file or respond to an onerous number of motions; and Defendant's evasiveness in responding to Plaintiff's discovery requests. Pl. Reply at 5, 23.

Plaintiff states that he did not request permission to correspond with these inmates earlier because he did not know where they were incarcerated and thus could not request approval for correspondence as required by the California Code of Regulations. Pl. Reply Ex. D, "May 18, 2016 Decl. D. Harris." He alleges he had no way of learning the inmates' whereabouts because he was incarcerated and believed that seeking help from someone outside the prison would have been "illegal."[3] Id. Plaintiff alleges that he had been asking correctional counselors since October 2014 how to communicate with inmates but only recently learned the correct procedures. Id.

---

[3] The CDCR maintains a free, public website where individuals may look up the CDCR numbers and facilities of any prison inmate in California. See http://inmatelocator.cdcr.ca.gov.

Below, the Court will summarize Plaintiff's proffered testimony as to each witness.

### 1. Inmate Rudy Tellez

Mr. Rudy Tellez, who was Plaintiff's cellmate on the date of the cell search in question, has firsthand knowledge of Defendant Escamilla's actions and statements during the search. Sometime after the search, Mr. Tellez signed a declaration in which he described it in detail. Pl. Mot. to Stay Ex. B,[4] "Decl. of R. Tellez." The declaration is not dated.

In his declaration, Mr. Tellez writes that on January 14, 2013, he was transferred to Plaintiff's cell, 3c03 138 up. Id. Mr. Tellez had never met Plaintiff before the transfer. Id. When Mr. Tellez arrived in his new cell, Plaintiff was not present. Id. Shortly after, floor officer Defendant Escamilla searched the cell even though Officer Sanchez had already searched it. Id. Mr. Tellez describes Defendant Escamilla's behavior as rude and abrasive; he seemed "angry about something." Id. Mr. Tellez observed Defendant Escamilla throw Plaintiff's legal work on the floor and spread it around with his foot as if looking for something. Id. Mr. Tellez then saw Defendant Escamilla pick up Plaintiff's Quran, which was in a gray cover, and dump the Quran out of the cover and onto the floor and kick it under the bed. Id. While Defendant Escamilla was searching the cell, Mr. Tellez heard him say something to Officer Sanchez. Id. Mr. Tellez, fearing Plaintiff would blame his new cellmate for the mess, immediately asked Defendant Escamilla to give him a cell search slip. Id. Defendant Escamilla told Mr. Tellez to "work it out with [his] cellie." Id. Mr. Tellez left the cell in its state of disrepair, and when Plaintiff returned to the cell, Mr. Tellez immediately told Plaintiff that Defendant Escamilla was responsible for the mess. Id. Mr. Tellez reports that Defendant Escamilla did not give Plaintiff a cell search slip until twenty-four hours later. Id.

---

[4] Plaintiff actually left this exhibit sheet blank, however as this exhibit follows Exhibit A the Court will refer to it as Exhibit B.

During Plaintiff's November 19, 2015 deposition, Plaintiff testified that Mr. Tellez told him a few weeks after the cell search that he heard Defendant Escamilla refer to Plaintiff as a "Black raghead Muslim terrorist" while he was searching Plaintiff's belongings. Pl. Reply Ex. C, "Tr. of Pl. Dep. Test." at 117:6-19. Mr. Tellez told Plaintiff that he did not disclose this information earlier due to his fear of reprisal from Defendant Escamilla. Id. at 119:1-12. At his deposition, Plaintiff conceded that Mr. Tellez already stated he did not wish to testify further as to the cell search, but maintains that Mr. Tellez's reticence was due to his fear of retaliation from Defendant Escamilla. Id. at 165:12-166:1. Plaintiff argues that as Mr. Tellez is no longer incarcerated in CSP-Corcoran, he has no need to fear retaliation and will therefore speak freely about this case. Pl. Mot. to Stay at 6-7.

### 2. Inmate Barns

Plaintiff believes Mr. Barns will testify that Defendant Escamilla desecrated his own Quran during a cell search several weeks after January 14, 2013, an incident which led Mr. Barns to file a 602 against Defendant Escamilla. Pl. Mot. to Stay at 5. Plaintiff also claims that Mr. Barns witnessed the January 14, 2013 search of Plaintiff's cell and can testify as to Defendant Escamilla's demeanor during the cell search, which Mr. Barns will describe as angry and hateful towards Muslims. Pl. Reply at 13. Plaintiff states that to the best of Plaintiff's knowledge, Mr. Barns is currently on parole and living with his family in Santa Clarita. Pl. Reply at 14.

### 3. Inmate Larry Banks

Plaintiff claims Mr. Banks witnessed the aftermath of the cell search on January 14, 2013 and spoke to Mr. Tellez about the search afterward, although Mr. Banks himself was unable to see inside Plaintiff's cell during the search. Pl. Mot. to Stay at 6. Mr. Banks would also have information pertaining to the search of Mr. Barns' cell several weeks later. Id. at 7. Mr. Banks has had prior personal experiences with Defendant Escamilla and would testify as to Defendant Escamilla's habit of destroying inmates' cells during cell searches. Pl. Reply at 15.

### 4. Inmate Roberto Ballard

Plaintiff attaches two written statements from Mr. Roberto Ballard to his motion. The first statement, dated August 30, 2013, details a search of Mr. Ballard's cell on July 19, 2013, during which Defendant Escamilla left Mr. Ballard's cell in a state of utter disrepair. Pl. Mot. to Stay Ex. B, "Aug. 30, 2013 Decl. R. Ballard." In the second statement, dated October 8, 2013, Mr. Ballard states that on January 19, 2013[5], he was housed directly across from Plaintiff's cell. Pl. Mot. to Stay Ex. B, "Oct. 8, 2013 Decl. R. Ballard." Mr. Ballard observed Defendant Escamilla conduct a "routine" search of Plaintiff's cell. Id. Mr. Ballard saw Defendant Escamilla throw a personal religious book onto the floor during the search. Id. Defendant Escamilla also left Plaintiff's other personal property in a state of disarray. Id. Mr. Ballard describes Defendant Escamilla's actions as "obviously deliberate with malicious intent as his goal." Id.

Mr. Ballard would also testify to his personal knowledge of Defendant Escamilla's disrespectful treatment of inmates' religious property. Pl. Reply at 17.

### 5. Inmate Cisneros

Plaintiff believes Mr. Cisneros may have seen or heard about the cell search on January 14, 2013. Pl. Mot. to Stay at 8. He also attaches a written statement by Mr. Cisneros, dated May 1, 2013, in which Mr. Cisneros describes in detail a search conducted by Defendant Escamilla in Mr. Cisneros' own cell. Pl. Mot. to Stay Ex. B, "Decl. R. Cisneros." Mr. Cisneros writes that on February 18, 2013, Defendant Escamilla, along with CO Clausen, searched Mr. Cisneros' cell. Id. During the search, Defendant Escamilla removed legal books, dictionaries, and other items from Mr. Cisneros' cell, and left Mr. Cisneros' cell in such a state of disarray that it took Mr. Cisneros the rest of the day to put everything back where it belonged. Mr. Cisneros writes that he harbors no animus against Defendant Escamilla, but rather does not

---

[5] Presumably Mr. Ballard meant to write January 14, 2013.

understand why Defendant Escamilla chose to so thoroughly disrupt his personal property during the cell search. Id.

Plaintiff further argues that Mr. Cisneros would testify as to his own personal knowledge of Defendant Escamilla's improper treatment of other inmates' property during cell searches due to the inmates' religion, race, or crimes. Pl. Reply at 21.

### 6. Inmate Doug Bauer

Plaintiff concedes Mr. Doug Bauer was not an eyewitness to the cell search and Plaintiff does not seek to gain additional information from him. Mr. Bauer's testimony will therefore not be further discussed.

### C. Defendant's Arguments

Defendant objects that Plaintiff has not shown what new and relevant evidence these inmate witnesses will provide and why or how it might help Plaintiff respond to Defendant's summary judgment motion. Defendant contends that Plaintiff improperly seeks to engage in a "fishing expedition" in the hopes of turning up new evidence without articulating what this new evidence would be.

Defendant further claims that even if Plaintiff's inmate witnesses did possess relevant information, Defendant would not be able to facilitate communication with them, as the CDCR has established procedures for inmates who wish to correspond with other inmates. See Cal. Code Regs. § 3139. Defendant argues that Plaintiff has failed to show good cause for not following these procedures earlier in the litigation.

Finally, Defendant argues that Plaintiff was not diligent in obtaining information from these inmates prior to the close of discovery, either on his own or through Defendant. Defendant points out that in the eight months during which discovery remained open, Plaintiff propounded two sets of requests for admissions and interrogatories on Defendant, but never propounded discovery seeking information about the inmate witnesses listed in the present motion. Defendant further argues that Plaintiff's failure to obtain further statements from the inmate witnesses while they

remained in CSP was inexcusable, particularly in light of the fact Plaintiff obtained written statements from some witnesses even before he filed his complaint.

### C. Discussion

#### 1. Plaintiff's Request for Defendant to Facilitate Communication with Incarcerated Witnesses

The Court need not consider Plaintiff's request for an order that Defendant facilitate communication with incarcerated eyewitnesses, as Plaintiff has already requested and received permission from Correctional Counselor Coleman to engage in written communication with those witnesses.

#### 2. Plaintiff's Request That This Court Stay Proceedings Pending Plaintiff's Communication With Inmate Witnesses

The sole remaining issue before the Court is whether or not to grant Plaintiff's request to stay the proceedings pending Plaintiff's communication with the listed incarcerated witnesses. In deciding whether to grant Plaintiff's motion, the Court must consider: (1) whether Plaintiff exercised diligence in pursuing this discovery before discovery closed; and (2) whether the evidence Plaintiff seeks both exists and would impact ruling on Defendant's summary judgment.

##### a. Plaintiff's Diligence In Pursuing Discovery

Plaintiff argues that a stay must be granted because he has not had a "realistic opportunity to pursue discovery" in this case. The Court disagrees. This incident occurred on January 14, 2013. In the following three year-plus time period, Plaintiff obtained written statements from inmates Tellez, Ballard, Cisneros, and Bauer. Plaintiff also remained cellmates with Mr. Tellez for several weeks after the cell search took place. Plaintiff has not shown why he was unable to follow-up on these statements or obtain more detailed statements from other inmates while they remained incarcerated in the same institution as Plaintiff.

Plaintiff fails to show good cause for waiting so long to utilize the avenues available to him under CDCR regulations to correspond with witnesses transferred out

of CSP.  At least as early as October 2014, Plaintiff began investigating methods of communicating with inmates at other institutions.  The reasons given for not acting on such information are not persuasive, particularly since Plaintiff has shown himself to be quite capable of maneuvering through the litigation process. The Court is unable to find that Plaintiff's failure to further contact the witnesses is "compatible with a finding of diligence." Johnson, 975 F.2d at 609.

Furthermore, discovery opened on April 1, 2015.  Over the course of discovery, Plaintiff served Defendant with two requests for Admissions and Interrogatories and filed two motions to compel. (ECF Nos. 51 & 61.)  Within those requests, Plaintiff did not ask Defendant to disclose the CDCR numbers and whereabouts of any inmate witnesses, and indeed, did not propound a single question pertaining to inmates Bauer, Ballard, Banks, or Cisneros. His excuse for not doing so is that Defendant had been so unforthcoming during discovery.  If Plaintiff had formally asked for and been denied such information, he could have asked the Court for relief as he has done elsewhere in this case. Similarly, if he needed more time to propound discovery to Defendant, he could have asked for it. Indeed, the Court has granted seven motions for extensions of time brought by Plaintiff in this case. (See ECF Nos. 53 and 56; 67 and 68; 72 and 73; 75 and 76; 88, 89, 90, and 91).

The Court finds Plaintiff has not shown he made a diligent effort to obtain the requested discovery prior to the close of discovery.  Mackey v. Pioneer Nat. Bank, 867 F.2d 520, 524 (9th Cir. 1989) ("A movant cannot complain if it fails diligently to pursue discovery before summary judgment.")

### b.  Necessity of the Testimony to Plaintiff's Opposition

Though Plaintiff's lack of diligence justifies denial of this motion, the Court also disagrees with Plaintiff's claim that the inmate witnesses have information essential to Plaintiff's opposition to Defendant's summary judgment motion.

To defeat summary judgment, Plaintiff will have to show that there exists a genuine issue of material fact as to whether Defendant violated a clearly established

11

constitutional right and whether Defendant's actions substantially burdened Plaintiff's ability to practice his religion. Defendant argues that Plaintiff has failed to show that Defendant substantially burdened Plaintiff's ability to exercise his religion. Def's Mot. for Summ. J. (ECF No. 69-1.) Defendant also argues that the alleged conduct has not been shown to violate a clearly established constitutional right and thus is qualifiedly immune. Id.

Without additional discovery, Plaintiff can aver to his own observations as to what happened in his cell during his absence. He has a statement from Mr. Tellez attributing those happenings and specific acts to Defendant. To the extent Defendant denies those acts, we may have a factual dispute. If so, summary judgment will address the legal issue of whether Plaintiff's allegations, if believed, would support a finding for Plaintiff. This latter issue focuses on the law and is not likely to be influenced by further corroboration of Plaintiff's claims. From Plaintiff's proffers, the proposed additional witnesses will do no more than corroborate Plaintiff's claims as to what Defendant did. Plaintiff has not suggested otherwise or outlined what new and relevant evidence he believes his inmate witnesses might offer.

In light of Plaintiff's failure to demonstrate diligence in obtaining this evidence prior to the close of discovery, his failure to state with specificity what new and helpful evidence these witnesses would disclose if discovery were reopened, and it not appearing the proposed new evidence is necessary or helpful in responding to Defendant's motion for summary judgement, Plaintiff's motion to stay the proceedings for the purpose of reopening discovery pursuant to Rule 56(d) will therefore be denied.

**V.    PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE**

Plaintiff requests this Court take judicial notice of its own filings in this case. Pl. Reply Ex. A, "Request for Judicial Notice." That motion will be granted.

**V.    CONCLUSION AND ORDER**

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's motion for leave to stay the proceedings and reopen discovery (ECF No. 78) is DENIED;
2. Plaintiff request for the Court to take judicial notice of its own filings (ECF No. 94, Ex. A) is GRANTED;
3. Plaintiff is afforded twenty-one (21) days from the date of service of this order in which to file his opposition to Defendant's motion for summary judgment; and
4. If Plaintiff fails to file an opposition or statement of non-opposition within twenty-one days, the Court will recommend that the action be dismissed, with prejudice, for failure to obey a court order and failure to prosecute.

IT IS SO ORDERED.

Dated:   June 15, 2016                    /s/ *Michael J. Seng*
                                          UNITED STATES MAGISTRATE JUDGE