UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARRELL HARRIS,<br><br>    Plaintiff,<br><br>    v.<br><br>S. ESCAMILLA,<br><br>    Defendant. | Case No.  1:13-cv-1354-DAD-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO**<br><br>    **(1) GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>    **(2) DENY DEFENDANT'S MOTION TO STRIKE EVIDENCE SUBMITTED BY PLAINTIFF IN OPPOSITION**<br><br>**(ECF Nos. 69, 109-3)**<br><br>**FOURTEEN (14) DAY OBJECTION DEADLINE** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. The case proceeds on Plaintiff's October 31, 2013, first amended complaint ("FAC") against Defendant Escamilla for violating Plaintiff's First Amendment right to the free exercise of his religion. (ECF No. 9.)

**I.      Relevant Procedural History**

Before the Court is Defendant's February 8, 2016 motion for summary judgment.

(ECF No. 69.)  On July 18, 2016, Plaintiff filed his opposition.  (ECF No. 107.)  On July 26, 2016, Defendant filed a reply. (ECF No. 109.) The matter is submitted pursuant to Local Rule 230(/).

Within his reply, Defendant filed a motion seeking to strike several pieces of evidence submitted by Plaintiff in support of his opposition.  (ECF No. 109-3.)    Plaintiff has not responded to this request, nor has he sought leave to do so. That motion is also pending before the Court.

## II.   Facts[1]

### A.   Undisputed Facts

The undisputed facts may be summarized as follows.

At the time of the events underlying this action, Plaintiff was incarcerated at California State Prison ("CSP-Corcoran") in Corcoran, California.  ("Pl.'s Resp. to Def.'s Req. for Admis. No. 1" (ECF No. 69-5 at 3.)) Plaintiff, who has been a practicing Muslim for all of his adult life, was the inmate Imam at CSP-Corcoran. (FAC at 4; Harris Dep. 10:20-22, 46:13-19.)

On January 14, 2013, Defendant Escamilla and his partner, Officer Sanchez, searched Plaintiff's cell while Plaintiff was not present. (FAC at 3.)  Plaintiff's cellmate, inmate Rudy Tellez, was present.  (FAC at 5; Tellez Decl.[2] (ECF No. 107 at 62).) Plaintiff received a "cell search slip" documenting the search.  (Escamilla Decl. ¶ 5.)

---

[1] Defendant argues in his reply brief (ECF No. 109 at 2) that Plaintiff's failure to include a separate response to Defendant's Statement of Undisputed Facts justifies deeming all of Defendant's facts admitted pursuant to Local Rule 260(b).  That Rule requires that a party opposing summary judgment admit those facts that are undisputed, deny those that are disputed, and cite to a particular part of the record in support of that denial. Plaintiff does, however, respond to Defendant's Undisputed Facts in substance by setting out his own version of the facts in the body of his opposition (ECF No. 107 at 3-29), albeit without citing to specific portions of the record in support of each fact. However, Plaintiff's factual allegations made on personal knowledge and sworn to under penalty of perjury may be treated as opposing affidavits. See McElroy v. Cox, Civil No. 1:08cv1221-JTM-MDD, 2011 WL 2580294, n. 4 (E.D. Cal. June 23, 2011). Where the Court finds support for an asserted fact in a sworn portion of the record based on personal knowledge, the Court will consider it.

[2] Defendant moves to strike numerous items and portions of evidence submitted by Plaintiff with his opposition, including portions of the Tellez Declaration.  (ECF No. 109-3.) If and when the Court finds it appropriate to consider evidence that Defendant has objected to, it will note and explain its reason for considering such evidence.  Unless so mentioned, the objected-to evidence was found not to be relevant or material to the Court's evaluation and conclusions.

None of Plaintiff's religious property, including his Quran, was taken from the cell during the search, however a cloth book cover was seized. ("Cell Search Receipt," Escamilla Decl. Ex. A (ECF No. 69-6 at 4); Harris Dep. 139:21-140:3.) Ten days after the search, Plaintiff obtained a replacement Quran from the prison chapel. (Harris Dep. 44:11-21, 49:13-20:10, 183:25-184:13.)

Random cell searches are necessary to maintain institutional security. (Escamilla Decl. ¶¶ 2-3.) There are no prison policies or regulations against searching an inmate's religious property. (Id. at ¶ 4; Pl. Opp'n (ECF No. 107) at 4.)

## B. Disputed Facts

### 1. The Cell Search

#### a. Defendant's Version

Defendant maintains that the cell search was routine and conducted according to protocol. (Escamilla Decl. ¶¶ 3-5.) He claims that the items he confiscated from the cell were contraband, he left the cell and its contents exactly as he found them, and he never stepped on or kicked Plaintiff's Quran. (Id. ¶ 5-6.)

#### b. Plaintiff's Version

Plaintiff states he returned to his cell to find his Quran on the floor under his bunk. (FAC at 5.) Tellez's declaration describes the events of in a single paragraph. (See ECF No. 107 at 62.) Tellez says he saw Defendant pick up Plaintiff's Quran, remove its cloth cover, drop it on the floor, and kick it. (Harris Dep. 104:5-10; Tellez Decl.) Plaintiff states a boot print was left on the Quran. (FAC at 5.)

Plaintiff submitted an Inmate Request Form 22 ("CDCR 22") to Community Resource Manager ("CRM") Marlene Smith Robicheaux the same day as the search, complaining about Defendant's mistreatment of Plaintiff's belongings, but making no mention of a need for a new Quran. (Jan. 14, 2013 CDCR 22 (ECF No. 107 at 121)).

### 2. Desecration of the Quran

#### a. Defendant's Version

Defendant denies having desecrated Plaintiff's Quran in any way. He asserts that there is not now and has never been a boot print on it. (Harris Dep. 20:14-23:16.) In support, he notes that neither Plaintiff's January 14, 2013 CDCR 22 or his January 23, 2013 inmate grievance form mention any such boot print on the Quran. (ECF No. 107 at 64-69, 121) He also refers to the declaration of Imam A. Johnson, the Muslim chaplain at Pleasant Valley State Prison ("PVSP") (ECF No. 69-7), who submits that the absence of physical proof of desecration (i.e., no visible boot print) establishes that the Quran was not desecrated as defined by Islamic law. (Johnson Decl. ¶ 4.) (Imam Johnson does not state how "desecration" is defined under Islamic law.)

Imam Johnson declares further that even if there had been a boot print which deterred Plaintiff from reading his Quran, Islamic law does not require reading the Quran daily; had such a law existed, Plaintiff could have read alternative religious texts in his possession. (Johnson Decl. ¶ 3.)

#### b. Plaintiff's Version

Plaintiff states that the boot print that was once visible on his Quran has since faded away. (Harris Dep. 21:19-24.) He also rejects the interpretation of Islamic law proffered by Imam Johnson and cites to other religious texts and scholarly material to support his own interpretation. (Pl.'s Opp'n at 9-10, 99-117.) According to Plaintiff, his Quran was "desecrated"—that is, touched with dirt or feet—when Defendant stepped on it and kicked it under the bed, and Plaintiff thus was unable to read it. (FAC at 7. Pl. Opp'n at 105-17.)

Plaintiff also states that his Muslim faith requires him to read the Quran every day and no other religious text is an adequate substitute. (Pl. Opp'n at 11-12, 99-104, and 116.)

4

### 3. Obtaining a New Quran

#### a. Defendant's Version

Plaintiff had requested and received religious books and materials from CRM Robicheaux in the past. (Robicheaux Decl. (ECF No. 69-8) ¶¶ 3-4.) He did not request a new Quran from CRM Robicheaux after the January 14 event. Thus, the failure to obtain a new Quran promptly is attributable to Plaintiff's failure to request one.

#### b. Plaintiff's Version

Plaintiff attributes his inability to immediately obtain a replacement Quran to circumstances beyond his control. The day after the cell search, Plaintiff went to the prison chapel to retrieve a new copy, but an unnamed prison official denied him access. (Harris Decl.[3] (ECF No. 107 at 119.)) On Plaintiff's next available chapel visit opportunity, the prison was on lock-down. Plaintiff had to wait another week before he could enter the chapel and request a new Quran. Id. Plaintiff finally obtained a new Quran ten days after the incident.

Plaintiff claims that he did not need nor seek CRM Robicheaux's assistance in replacing the Quran because, as an inmate Imam, Plaintiff should have had the entire chapel library at his disposal. (Pl.'s Opp'n at 14.) In any case, CRM Robicheaux never responded to Plaintiff's January 14, 2013 CDCR 22 complaining about the search or to his "many" requests for materials and books. (Harris Decl. at 120.) Id. (He does not say when these requests were made or what, specifically, was requested.)

### IV. Summary Judgement Standard

Any party may move for summary judgment, and "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[3] Defendant moves to strike Plaintiff's declaration (one of three) attached at pages 119-120 of Plaintiff's opposition. (ECF No. 109-3 at 6.) That declaration, made under penalty of perjury, sets forth reasons Plaintiff could not obtain a new Quran until ten days after the search. Defendant objects that this information is "immaterial." The Court finds the evidence to be a relevant, material and admissible response to Defendant's claim that the ten day delay was of Plaintiff's own making. The objection as to the Harris Declaration at ECF No. 107, at 119, is overruled. .

56(a). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  If the movant will have the burden of proof at trial, it also must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. (citing Celotex, 477 U.S. at 323). Once the moving party has met its burden, the nonmoving party must point to "specific facts showing that there is a genuine issue for trial." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." Soremekun, 509 F.3d at 984.

Here, Defendant has moved for summary judgement.  As the party who will not have the burden of proof at trial, Defendant "can prevail merely by pointing out that there is an absence of evidence to support the [Plaintiff's] case." Id. (citing Celotex, 477 U.S. at 323).  Assuming Defendant has met this burden, to defeat summary judgment, Plaintiff must point to "specific facts showing that there is a genuine issue for trial." Id. (quoting Liberty Lobby, Inc., 477 U.S. at 250).  In any instance where there is a dispute over a material fact, the Court must resolve any controversy in favor of the non-moving party. Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990).

**V.  Discussion**

    **A.  Plaintiff's Miscellaneous Arguments**

The Court first addresses two arguments propounded by Plaintiff in his opposition. First, Plaintiff seeks to submit evidence of Defendant's character as proof that he committed a constitutional violation in this case. (Pl.'s Opp'n at 6; "Proof of Reprisals and 602's Related Cases" (ECF No. 107 Ex. B-8 at 80-96.))  Since such evidence is inadmissible character evidence and not dispositive of whether Defendant behaved inappropriately during the cell search at issue in this case, the Court will not consider it.  Fed. R. Evid. 404(a) ("Evidence of a person's character or a trait of character not admissible for the purpose of proving action in conformity therewith on a particular occasion"); Perez v. Woodford, No. CV-1-06-610-MHM, 2010 WL 3943536, at *8 (E.D. Cal. Oct. 1, 2010) ("The Court cannot consider inadmissible evidence in its summary judgment analysis") (citing Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002).

Plaintiff also challenges the validity of the cell search. Issues of whether the search was conducted in accordance with established protocol or whether non-religious contraband was improperly removed from the cell are not before this Court at this time.

### B. First Amendment Free Exercise of Religion

#### 1. Legal Standard

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. "[P]risoners retain the protections of the First Amendment" but their "right to freely exercise [their] religion is limited by institutional objectives and by the loss of freedom concomitant with incarceration." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1997)). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith, but an impingement on an inmate's constitutional rights will be upheld "'if it is reasonably related to legitimate penological interests.'" Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

#### 2. Analysis

##### a. Substantial Burden

In order to reach the level of a constitutional violation, the interference with one's practice of religion "must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief" sincerely held by Plaintiff. Freeman, 125 F.3d at 736-37. Defendant propounds several arguments in support of his assertion that Plaintiff's religious exercise was not "substantially burdened."

###### ii. Evidence Quran Was Stepped On or Kicked

Defendant first argues that Plaintiff has produced no competent evidence that his Quran was kicked or stepped on or otherwise desecrated. Indeed, Plaintiff's failure to mention any such claim in his earlier grievances suggests he contrived it purely for litigation purposes.

On the other hand, witness Tellez avers that he saw Defendant drop the Quran on the floor and kick it. Plaintiff claims he saw a foot print on the Quran immediately after the search.

This dispute of fact precludes summary resolution of that fact.

### ii. Requirement to Read the Quran Every Day

Defendant relies on Imam Johnson's statement to prove that Islamic law does not require Plaintiff to read the Quran every day. Plaintiff disagrees.

The Court cannot resolve that religious dispute. It need not do so hear.

It is well-settled that "it is the sincerity of the inmate's belief rather than its centrality to his faith that is relevant to the free exercise inquiry." Shakur, 514 F.3d at 884-85 (overruling holding in Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), that a plaintiff asserting a free exercise claim must show that the defendants prevented the plaintiff from engaging in conduct mandated by his faith); Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994). Here, Plaintiff asserts that his interpretation of Islam imposes such a requirement. As it is the sincerity, and not centrality, of Plaintiff's belief that controls, summary resolution of that issue is unavailing.

### iii. Defendant Did Not Cause the Ten-Day Delay in Obtaining a New Quran

Defendant argues that he did not cause the ten-day deprivation of Plaintiff's Quran and that, in any event, a ten-day delay is a minor, insubstantial burden on Plaintiff's religious exercise.

The evidence before the Court establishes that Plaintiff did not receive a replacement Quran until ten days after the incident either because (1) he did not ask for one from CRM Robicheaux, (2) an unidentified officer denied Plaintiff access to the chapel the day after the incident, and/or (3) a prison lock down prevented him from accessing the chapel until ten days after the incident.

Common law of torts provides the causation element applicable to civil rights violations. Stevenson v. Koskey, 877 F.2d 1435, 1438 (9th Cir. 1989) "The requisite

causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." Id. at 1438-89 (quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)); see also Van Ort v. Estate of Stanwich, 92 F.3d 831, 837 (9th Cir. 1996) (discussing the requirement under section 1983 that the alleged unconstitutional conduct must be the proximate cause of the section 1983 injury).

In this case, there is no evidence that Defendant was directly responsible for the ten day delay. The question thus is whether he knew or reasonably should have known that desecration of Plaintiff's Quran would result in Plaintiff having to go without a Quran for an extended, ten day period. There is no evidence to support such a conclusion. Plaintiff's failure to immediately request a new Quran, the unidentified officer's refusal to allow Plaintiff into the chapel, and the prison lock down were not reasonably foreseeable consequences of Defendant's conduct.

To the extent a defendant might anticipate that desecration of a Quran could deprive its owner of access to a replacement for a day or so, such a delay would not constitute a substantial burden. Canell v. Lightner, 143 F.3d 1210, 1215 (9th Cir. 1998) (interference that is "relatively short-term" is not substantial); Freeman, 125 F.3d at 736-37; see, e.g., Green v. Sneath, 508 Fed. App'x 106, 110 (3d Cir. 2013) (no substantial burden where officials offered prisoner a replacement Quran within one day of seizing his and any delay in obtaining prisoner's preferred translation of the Quran was for administrative reasons not attributable to the defendants); Marsh v. Corrections Corp of America, 134 F.3d 383, 383 (10th Cir. 1998) (table decision) (fifteen-day deprivation of prisoner's religious property did not amount to a First Amendment violation).

Since the Court finds that no facts before it justify holding Defendant responsible for a ten-day deprivation of Plaintiff's access to the Quran, the Court need not determine whether the ten day absence constituted a substantial burden on Plaintiff's religious exercise.

10

Thus, the Court finds that even if the evidence supported Plaintiff's claims that Defendant desecrated Plaintiff's Quran, a despicable act in and of itself, and even if Plaintiffs' beliefs dictated that he read from the Quran daily, it cannot support a finding that Defendant caused an extended delay in Plaintiff replacing his Quran and thus caused a substantial burden on Plaintiff's religious exercise. Accordingly, the undersigned will recommend that summary judgment be entered for Defendant. Given this recommendation, the Court sees no need to, and will not, address Defendant's alternative arguments, including his entitlement to qualified immunity.

**VI. Conclusion**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 69) be GRANTED; and
2. Defendant's motion to strike (ECF No. 109-3) be DENIED.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen** (14) days after being served with these Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within **fourteen** (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: September 22, 2016          /s/ *Michael J. Seng*
                                   UNITED STATES MAGISTRATE JUDGE